IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| RICHARD L. BURRIS, ) | Civil Action No. 0:04-1897-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| NORTHERN TOOL AND EQUIPMENT ) | |
| CO., INC.; MATT KLAREN; AND ) | |
| JIMMY WELCH, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

Plaintiff, Richard L. Burris ("Burris"), filed this action on June 16, 2004.[1] He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[2] Defendants, Northern Tool and Equipment Co., Inc. ("Northern Tool"), Matt Klaren ("Klaren"), and Jimmy Welch ("Welch"), filed a reply on June 13, 2005. Burris filed a memorandum in opposition to summary judgment on July 15, 2005. Defendants filed a reply on July 27, 2005.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts

---

[1] Burris filed his Complaint pro se. He subsequently retained counsel (see Notice of Appearance filed March 22, 2005) and is currently represented by counsel in this action.

[2] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or

2

admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Burris, an African-American male, began employment with Northern Tool as a material handler on June 14, 1999. He bid on and was awarded a transfer to the position of battery technician on the second shift in March 2000, which position he currently occupies. As battery technician, Burris is responsible for maintaining the batteries and keeping propane gas in the forklifts used in Northern Tool's warehouse. See Burris Dep. 42, 49, 65, 67-71; Lester Earl Jackson Dep. 14.

2. Welch, a Caucasian male, is Burris' supervisor. When Welch is not at the facility, Burris can refer questions to the hourly paid lead mechanic on his shift. Burris Dep. 68, 70-71.

3. While Burris was a material handler, he received counseling notices on August 26, 1999 concerning attendance; on August 27, 1999 for failure to follow proper receiving procedures; and September 9, 1999 concerning errors on the job. In January 2000, Burris was counseled regarding the company's policy prohibiting sexual harassment after several

3

      females in the workforce registered complaints about Plaintiff's behavior. Burris Dep. 52-54, 56-57, 58-65, and Exs. 2-5.

4. After Plaintiff transferred to the battery technician position, he was counseled in August 2000 about not performing his job duties as requested. On October 30, 2000, Welch counseled Plaintiff for repeated failures to clock out for lunch as required. Welch issued a written warning to Burris on July 9, 2001 for failing to call or show up for work.[3] Burris Dep. 72-76, Exs. 7, 8, 9.

5. In approximately September 2001, Burris saw a photograph in the forklift mechanics' work area depicting half of the face of Osama Bin Laden and half of the face of O.J. Simpson which was labeled "Bin Wheat."[4] Burris looked at the photograph, turned away, and went about his regular business. Burris Dep. 86-91.

6. Later in the day, when third shift lead mechanic Lester Earl ("Jack") Jackson ("Jackson") came into the maintenance shop, Burris casually pointed out the picture, asked Jackson when he thought of it, told Jackson that he did not think the picture should be in the plant, and then they departed the area. Burris Dep. 102-104. Burris Dep. 91, 94-95.

7. Jackson is the lead mechanic on the third shift. A lead is an hourly employee who is primarily responsible for assigning work to people on a shift. The lead mechanic on the second shift is Johnnie Johnson ("Johnson"). A lead person does not write up or discipline

---

[3] Burris contends that on July 3, 2001, he requested to be off work on July 7, 2001. Welch denies that Burris requested the day off, and reprimanded Burris for failing to show up for work. Burris Dep. 81; Welch Aff., Para. 2.

[4] The caption on the picture was a supposed parody of the character Buckwheat. Burris Dep. 86-90.

4

   employees. Discipline is handled by an employee's supervisor or Barbara Norgrasek ("Norgrasek"), the Human Resources Manager. Burris Dep. 70-71; Jackson Dep. 18, 22; Norgrasek Aff. Para. 1.

8. Burris claims that Jackson reported the "Bin Wheat" picture to management. Burris Dep. 95-96. Jackson thought that Burris had taken the photograph to Operations Manager Danny Robinson to make a complaint, but acknowledged that he had no personal knowledge as to whether this occurred. Burris denied reporting the picture to anyone other than Jackson. Burris Dep. 86-96, 104-105; Jackson Dep. 11, 20.

9. Klaren, the Director of Distribution for Northern Tool, held a meeting with all maintenance employees and explained to the employees that the photograph could be considered offensive and was not appropriate for the workplace. Burris Dep. 96-98.[5]

10. Burris claims that after the "Bin Wheat" incident he began to experience harassment from Welch. See Plaintiff's Opposition Memorandum at 3.

11. In approximately August 2002, Johnson sent Burris a memo requiring him to provide four working days notice for time off work. Burris Dep. 11. Burris thought this was more than the Union[6] Agreement required.[7]

---

[5]Northern Tool contends that it conducted an investigation and determined that the "Bin Wheat" document was left on the premises by an employee of a vendor. Klaren advised the vendor that the responsible individual was no longer permitted on Northern Tool property. Klaren Affidavit II.

[6]Bargaining unit employees at Northern Tool are represented by Teamsters Local Union No. 71 ("Union"). Klaren Aff., Para. 2.

[7]The Union Agreement (agreement between Northern Tool and the Union dated December 10, 2001- attachment to Klaren Aff.) provides that employees taking scheduled vacation days must provide ninety-six hours notice prior to the start of the day requested. Union Agreement Para.
(continued…)

12. On August 13, 2002, Burris complained that Welch told his co-workers that Burris, who was absent that day, was in jail for failing to pay child support. Burris Dep. Ex. 12.[8]

13. On October 3, 2002, Burris received a written warning for allegedly sexually harassing a female employee. Burris denied that he harassed the employee and claimed that she was sexually harassing him.[9] Burris Dep. 114-117, Ex. 14.

14. Burris received a counseling notice on October 29, 2002, for three days of unexcused absences. Burris Dep. Ex. 15. Burris contends that the notice was inappropriate because one of the days that was counted towards the violation, an absence on July 5, 2002, should not have been included because he worked that day (he admits that the other two absences were unexcused). Burris Dep. 119-121, Ex. 15.

15. In December 2002, Burris attended a forklift training session and complained that he was not paid overtime for the training. He was initially told that he was not going to receive overtime pay and he filed a grievance with the Union. After reviewing the matter, Northern Tool reversed its position and paid Burris overtime. Burris acknowledges that Northern Tool paid him the overtime to which he claims he was entitled. Burris Dep. 121-122, 124-125.

16. On January 16, 2003, Burris filed a grievance with the Union alleging that his request for time off had been unfairly denied. He claims he provided four days notice to take January

---

[7](…continued)
30.09.

[8]Burris has only presented his own hearsay testimony to support this allegation.

[9]The parties have submitted no evidence as to whether the female employee received any disciplinary action as a result of the incident.

20, 2003 as a floating holiday,[10] but his request was denied because he did not provide four working days notice. The Union later withdrew the grievance. Burris Dep. Ex. 21; Klaren Aff., Para. 3.

17. Burris claims that a similarly-situated white employee, Roger Ball, was granted vacation time despite requesting the time off with less than ninety-six hours notice. He has provided nothing to support this. Johnson testified that Roger Ball was denied vacation time that was earned. Johnson Dep. 19.

18. On February 11, 2003, Burris filed a grievance with the Union alleging "Administrative Harassment." He claims that he was denied the floating holiday requested on January 20, 2003, but charged a personal day when he took the day off. Burris admits that regardless of whether he was charged with taking a floating holiday or a personal day, he was paid for the day. He also complained that he was charged with a sick day even though he brought in a doctor's excuse for being out of work. Pursuant to the Union Agreement, employees are assessed personal days for absences due to sickness regardless of whether a doctor's note is provided. The Union later withdrew Burris' grievance. Klaren Aff., Para. 2; Union Agreement at Article 30; Burris Dep. 152, Ex. 22.

19. Burris received a written warning on March 14, 2003, for unexcused absences (January 20, January 21, and March 13, 2003). Burris filed a grievance with the Union, which was later withdrawn. Burris Dep. Ex. 23; Klaren Aff., Par. 3.

---

[10] Northern Tool recognizes six annual holidays and allows employees to take two additional days off of their own choosing. Klaren Aff., Para. 2; Union Agreement at Article 19.

20. On March 18, 2003, Burris filed a grievance with the Union complaining about harassment. He complained that a lead mechanic, Rick Smith, asked him why he was not washing the batteries as he was supposed to do. Burris stated that he had not been washing the batteries for several days because the machine used for the task was not operational. When Smith asked Burris about another employee's paperwork which indicated that the other employee washed batteries, Burris showed Smith that the machine was down and the area was completely dry. Burris claims that Welch had instructed Smith to fabricate a reason to discipline Burris. Burris admits he was not disciplined in any way for any failure to wash batteries. The Union withdrew the grievance. Burris Dep. 161-164, Ex. 24; Klaren Aff., Para. 3.

21. On May 1, 2003, Burris filed a grievance with the Union alleging harassment. He claims that Welch questioned him about damage to a forklift that was not Burris' fault. Burris was not counseled or disciplined for the incident. The Union withdrew the grievance. Burris Dep. 173-179, Ex. 28; Klaren Aff., Para. 3.

22. On August 5, 2003, Burris filed a grievance with the Union alleging harassment. Burris claimed that he arrived at work to find a large pile of battery acid in his workplace. He also claimed that he had brought up this problem less than a week before and no attention was paid to his claim. Burris did not know who left the battery acid on the floor either date. The Union withdrew the grievance. Burris Dep. 186-189, Ex. 30; Klaren Aff., Para. 3.

23. Burris filed another grievance with the Union on August 6, 2003, in which he complained of harassment tactics. He contends that a utility vehicle he used to respond to service calls

would not start and he discovered that a hidden on/off switch had been placed on the vehicle. Burris claims that the switch was used to deprive him of the vehicle and purposefully make his job more difficult (such as in the transporting of propane tanks). Burris Dep., Ex. 31. Welch states that he denied Burris access to the utility vehicle (although Burris was always allowed to use the vehicle if he asked for permission first) for approximately one week because he received complaints that Burris was using the vehicle to wander around the facility instead of doing his work. Welch Aff.,Para. 3; see Johnnie Johnson[11] Dep. 24; Rodney Goodman ("Goodman") Aff.;[12] Jackson Dep. 25.[13] The Union later withdrew the grievance. Klaren Aff., Para. 3.

24. Burris also claims that while he was on medical leave from August to November 2003, rumors were spread about his medical problems. He claims these rumors stemmed from Welch and/or Human Resources. Burris Dep. 266-272.[14]

25. On December 8, 2003, Burris received a final written warning after being involved in a verbal altercation with another employee. Burris Dep., Ex. 32. After a departmental safety meeting, Plaintiff and co-worker Alvin Clifton ("Clifton"), an African-American male, had a confrontation in the battery room. Afterwards, both Burris and Clifton complained to management that the other employee had threatened to kill him.

---

[11] Johnnie Johnson ("Johnson") was the lead man on Burris' shift. See Burris Dep. 212-213.

[12] Rodney Goodman, the second shift operation manager, states that he complained to Welch in Summer 2003 that Burris was riding around the warehouse instead of working. Goodman Aff.

[13] Jackson states that he talked to Welch after he received complaints from employees that Burris was spending too much time away from the battery room on the utility vehicle wandering the plant. Jackson Dep. 25.

[14] Burris has only presented his own hearsay testimony to support these claims.

9

>   Management reviewed the videotape from a camera in the battery room. The videotape contained no sound and it was not apparent to Klaren who the aggressor was or who made the threatening comments. Both Burris and Clifton were given final written warnings for violating company policy against threatening employees. Burris filed a grievance with the Union regarding the warning. The grievance was not pursued by the Union. Burris Dep. 204, 211-213, 216; Exs. 32- 33,; Johnson Dep. 28-29; Klaren Aff., Paras. 3 and 4.

26. On September 17, 2003, Burris filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Burris Dep., Ex. 36. The EEOC issued a Notice of Right to Sue on March 17, 2004. Burris Dep. 235-236, Ex. 37.

## DISCUSSION

Burris alleges:

> Northern Tool Company has allowed my supervisor Jimmy Welch to continuously [sic] practice descriminatory [sic] and retaliatory tactics on me or against me for the past 2 to 3 years, assisted by my plant manager Matt Klaren. Because of my actions in the exposure of racial material found in the workplace.

Complaint, at 3. Defendants argue that they are entitled to summary judgment because: (1) Welch and Klaren were not named as employers in Burris' EEOC charge; (2) Welch and Klaren cannot be held individually liable under Title VII; and (3) Burris fails to establish a claim for retaliation. In his opposition memorandum, Burris argues that he has established a claim for a racially hostile work environment and retaliation. He also claims that Welch can be held individually liable under Title VII. In their reply, Defendants contend that Burris did not allege a hostile work environment claim in his Complaint, and he fails to establish such a claim.

10

A.       Defendants Klaren and Welch

Defendants Klaren and Welch argue that they should be dismissed from this action because they were not identified as "employers" in the Charge filed with the EEOC and because there is no individual liability under Title VII.  Burris argues that Welch may not be dismissed because the Charge contains detailed enough information to put the EEOC on notice that Welch was being accused of unlawful acts and because Title VII allows for individual liability in cases alleging a racially hostile work environment.

The Fourth Circuit, in Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998), found that individual Defendants who were not named in the Charge could not be held personally liable for alleged violations of Title VII.  The Court stated:

> Under Title VII …. [,] a civil action may be brought only "against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1) (1994); 29 U.S.C. § 626(e) (1994). The purposes of this requirement include putting the charged party on notice of the complaint and allowing the EEOC to attempt reconciliation.

Id.  Here, Burris' Charge failed to include any mention of Klaren.   Burris did not name either Klaren or Welch as an employer in the Charge.  See Burris Dep., Ex. 36.

Additionally, Welch and Klaren cannot be held liable under Title VII in their individual capacities.  Under Title VII, supervisors are not liable in their individual capacities.  Lissau v. Southern Food Serv., Inc., 159 F.3d 177 (4th Cir. 1998)(holding that supervisors are not liable

11

in their individual capacities for Title VII violations).[15] Thus, it is recommended that Welch and Klaren be dismissed from this action.

      B.      <u>Harassment/Hostile Work Environment</u>

Burris alleges that he was subjected to a hostile work environment. Defendants contend that Burris failed to raise a hostile work environment claim in his Complaint and even if he did, he fails to show that the alleged conduct was based on his race or was sufficiently severe to alter his working conditions and create a hostile work environment.

Burris, in his Statement of Claim, provides:

> Northern Tool Company has allowed my supervisor Jimmy Welch to continuously pratice [sic] descrimanatory [sic], and retaliatory tactics on me or against me for the past 2 to 3 years, assisted by my Plant Manager Matt Klaren. Because of my action in the exposure of racial material found in the workplace.

Complaint at 3. It is a close call whether Burris has sufficiently asserted a hostile work environment claim. He appears to claim that the actions taken against him were retaliatory.[16] In the light most favorable to Burris for purposes of summary judgment, however, the undersigned assumes that Burris has asserted a hostile work environment claim.

---

[15] Burris, citing <u>Spriggs v. Diamond Auto Glass</u>, 165 F.3d 1015 (4th Cir. 1999), argues that an individual may be subject to liability under Title VII for a hostile work environment. The cited case, however, involved a claim under 42 U.S.C. § 1981, not Title VII. As noted by Burris, a second action was filed by Spriggs under Title VII and the actions were later consolidated. In the consolidated action, however, Spriggs abandoned his claims against the individual defendants and proceeded against his employer only. See <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, n. 3 (4th Cir. 2001). Burris also appears to be confusing the concept that actions of a supervisor may be imputable to the employer in a hostile work environment claim with the liability of an individual under Title VII.

[16] As noted above, Burris filed his complaint <u>pro se</u>, but did not seek to amend the complaint after he retained counsel.

To prevail on a Title VII hostile environment claim based on race, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [race] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995) (en banc); see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004).

Defendants concede for purposes of summary judgment that Burris was protected under Title VII and was subjected to unwelcome conduct, but contend that the alleged harassment was not based on Burris' race, the conduct was not sufficiently severe to alter the conditions of Burris' employment and create a hostile working environment, and was not imputable to Northern Tool.

Burris fails to establish a hostile work environment/harassment claim because he has not shown that the alleged actions were based on his race or that they were sufficiently severe or pervasive to alter his conditions of employment and to create an abusive work environment. He has not shown that the alleged actions, other than the "Bin Wheat" picture, are based on his race. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280-282 (4th Cir. 2000); Nichols v. Caroline County Bd. of Educ., 123 F. Supp. 2d 320, 327 (D. Md.)(black plaintiff's assertion that white supervisors subjected him to adverse employment actions "because I am who I am" insufficient;" [t]he court cannot attribute a racial character to the disagreement and misunderstandings between the parties based merely on [plaintiff's] conjectural opinion."); Sharafeldin v. Maryland Dep't of Pub. Safety, 131 F.Supp.2d 730, 741-43 (D.Md. 2001); see also Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)(evidence of workplace disagreements between

13

supervisors and subordinates concerning job duties and performance and of callous and insensitive treatment by supervisors is not sufficient to prove alleged harassment was based on plaintiff's race). Burris has presented no evidence of race-related comments (other the "Bin Wheat" incident) or other indications that the alleged harassment was taken based on his race.

Burris argues that the denial of time off in January 2003 and the denial of the use of the utility vehicle were based on his race because similarly-situated Caucasian employees were treated more favorably. Burris has presented no evidence to support his claim that Roger Burris was treated more favorably concerning the request for time off. Further, he has not shown that Ball, a maintenance utility person (see Plaintiff's Opposition Memorandum at 5), is similarly situated to him (a battery technician). As noted above, Welch stated that Burris could use the vehicle if he asked permission to do so first. He also has not shown that another similarly-situated Caucasian employee was allowed to use the vehicle when he was not allowed to do so.

The only incident of alleged harassment that is arguably based on Burris' race is the "Bin Wheat" picture. In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22(1993)). Among the circumstances examined are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. at 21.

Burris fails to show that this one incident constituted severe or pervasive conduct. See Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793, 797 (4th Cir.1987), cert. denied, 484 U.S. 1042 (1988)("occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts of racial discrimination."); Snell v. Suffolk County., 782 F.2d 1094, 1103 (2d Cir. 1986) ("To establish a hostile atmosphere, … plaintiffs must prove more than a few isolated incidents of racial enmity");  Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) (no violation of Title VII from infrequent use of racial slurs).  Thus, it is recommended that Defendants' motion for summary judgment be granted as to Burris' hostile work environment/harassment claim.

C. Retaliation

Burris alleges that he was retaliated against for complaining about the "Bin Wheat" picture.  Defendants contend that Burris fails to establish a prima facie case and that they have articulated legitimate, non-discriminatory reasons for the alleged retaliatory actions which Burris fails to show are pretextual.

To establish a prima facie case of retaliation under Title VII, it must be demonstrated that:

1) the employee engaged in protected activity;[17]

---

[17]Under Title VII, a plaintiff need not have filed a formal complaint with the EEOC or a state deferral agency to engage in a protected activity.  Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity.  Warren v. Halstead Indus., Inc., 802 F.2d 746 (4th Cir. 1986), cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

15

      2)      the employer took some adverse employment action against the employee; and

      3)      a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Burris fails to establish a prima facie case of retaliation, as discussed further below. Thus, it is recommended that Defendants' motion for summary judgment be granted as to Burris' retaliation claim.

      (1)      <u>Protected Activity</u>

Northern Tool contends that Burris did not engage in protected activity by showing the "Bin Wheat" picture to a lead mechanic because he did not lodge an internal complaint or complain to management. Burris testified that he did not have a discussion with anyone in supervision or management about the photograph, but that he did talk with lead man Jackson about the picture. Burris Dep. 104-105.

For purposes of summary judgment, the undersigned assumes that Burris engaged in protected activity by telling Jackson about the photograph. The failure to complain to a supervisor may result in the conduct not being "protected activity," see Ackel v. National Communications,

339 F.3d 376, 385 (5th Cir. 2005), but a complaint a co-worker that is conveyed to management may constitute protected activity. See Neiderlander v. American Video Glass, 80 Fed. Appx. 256 (3rd Cir. 2003)(unpublished).

### (2) Adverse Employment Action

Defendants argue that Burris fails to show that he was subjected to an adverse employment action as a result of the alleged protected activity. The Fourth Circuit, in Von Gunten v. Maryland, 243 F.3d 858 (4th Cir. 2001), clarified what an "adverse employment action" is for purposes of a Title VII retaliation claim. Although "ultimate employment actions" are adverse employment actions, a Title VII retaliation claim does not require an ultimate employment action, but does require an action that alters the terms, conditions, or benefits of employment. Von Gunten, 243 F.3d at 865-866. An objective test of "adversity" applies, and a plaintiff's subjective feelings about the employment action is a necessary, but not a sufficient, evidentiary showing to withstand summary judgment. See Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir.1988).

Burris does not appear to dispute Defendants' argument as to the majority of the alleged adverse employment actions. He, however, claims that the denial of the vehicle and the denial of a floating holiday were adverse employment actions.[18] Burris has not shown that the denial of the vehicle without asking permission first or the denial of the floating holiday, where he actually took the day off and received pay for it (albeit on different terms), altered the terms, conditions, or benefits of his employment.

---

[18] Burris claims that Jackson was told by Welch to write false statements about Burris' work performance. Burris Dep. 247-248. Jackson, however, testified that no one ever suggested to him that he write false statements concerning Burris' work performance. Jackson Dep. 15.

17

      (3)      Causal Connection

Northern Tool argues that Burris fails to establish a causal connection because too long a period of time passed between the alleged protected activity and the alleged adverse actions.[19] The Fourth Circuit has held that a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Generally, however, the passage of time tends to negate this inference. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, (2001) (per curiam) (citing cases); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998). Here, Burris does not appear to establish a causal connection based on proximity alone as his alleged protected activity occurred (in approximately September 2001) almost one year prior to the first of the alleged adverse employment actions (a rumor that Burris was allegedly in jail). See, e.g., Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C.1992)(concluding that the passage of nearly a year precluded an inference of causal connection); Parrott v. Cheney, 748 F. Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), aff'd per curiam, 914 F.2d 248 (4th Cir.1990).

Additionally, Burris fails to establish a causal connection because he has not shown that the persons taking the alleged adverse employment actions (such as Welch, Klaren, or Norgrasek) knew that he engaged in the alleged protected activity of reporting the "Bin Wheat" picture. See

---

[19]Burris has not disputed this, instead arguing that a causal connection is not an element of a hostile work environment claim. Plaintiff's Opposition Memorandum at 12.

Dowe, 145 F.3d at 657 (plaintiff failed to establish third prong of prima facie case of retaliation claim where decision maker was unaware that plaintiff had engaged in protected activity); Causey v. Balog, 162 F.3d at 803 ("Knowledge of a charge [of discrimination] is essential to a retaliation claim."); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001)(no causal connection because individual taking action against employee had no knowledge of protected activity). As noted above, Burris denied reporting the picture to anyone other than Jackson. Burris Dep. 104-105.

## CONCLUSION

Based on the foregoing, it is recommended that Defendants' motion for summary judgment (Doc. 41) be granted.

>Respectfully submitted,
>
>s/Joseph R. McCrorey
>United States Magistrate Judge

November 30, 2005
Columbia, South Carolina